586 October 23, 2024 No. 746

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

Glenn PALMER,
*Plaintiff-Respondent,*
*v.*
Haley OLSON,
*Defendant-Appellant.*
Grant County Circuit Court
20CV34464; A176858

Thomas B. Powers, Judge.

Argued and submitted July 12, 2023.

Nadia H. Dahab argued the cause for appellant. Also on the briefs was Meredith Holley, Eris Conflict Resolution and Sugerman Dahab.

Paige Chrz argued the cause for respondent. On the brief were Emerson Lenon, Daniel E. Thenell and Thenell Law Group, P. C.

Before Ortega, Presiding Judge, and Powers, Judge, and Hellman, Judge.

HELLMAN, J.

Reversed and remanded as to defendant's 42 USC section 1983 counterclaim; otherwise affirmed.

**HELLMAN, J.**

Plaintiff Glenn Palmer, when he was the then-elected sheriff of Grant County, brought this civil action alleging claims of defamation and false light against defendant Haley Olson for statements she made on social media in the months leading up to the November 2020 election. Defendant filed three counterclaims alleging that plaintiff's pursuit of his claims constitutes retaliation under state and federal law. The trial court granted plaintiff's special motion to strike defendant's counterclaims under ORS 31.150, Oregon's Anti-Strategic Lawsuits Against Public Participation (anti-SLAPP) statute, after concluding that they were barred by Oregon's litigation privilege. On appeal from the limited judgment dismissing her counterclaims, we conclude that defendant has not established reversible error with regard to her state law counterclaims. We further conclude that Oregon's litigation privilege does not bar defendant's federal law counterclaim under 42 USC section 1983, because state law cannot immunize an alleged violation of federal law and plaintiff has not demonstrated that his conduct is immune under the common law as it existed in 1871 when Congress enacted section 1983. We therefore reverse the limited judgment of dismissal as to defendant's federal counterclaim and otherwise affirm.

ORS 31.150[1] authorizes a party to make a "special motion to strike against a claim in a civil action" that is "predicated on speech and petitioning activity potentially entitled to constitutional protection." *Tokarski v. Wildfang*, 313 Or App 19, 21, 496 P3d 22, *rev den*, 368 Or 788 (2021). A special motion to strike may be made "against any claim in a civil action that arises out of *** [a]ny oral statement made, or written statement or other document submitted, in a legislative, executive or judicial proceeding or other proceeding authorized by law," among other enumerated categories of speech and conduct. ORS 31.150(2)(a). Once the moving party has met their "initial burden of making a *prima facie* showing that the claim against which the motion is made arises

---

[1] The parties litigated this special motion to strike in the trial court under ORS 31.150 (2021). The legislature amended ORS 31.150 during the pendency of this appeal. *See* Or Laws 2023, ch 71, § 1 (effective Jan 1, 2024). Those changes do not affect our analysis, so we cite the current version of the statute.

out of" one of those categories, the burden then shifts to the nonmoving party "to establish that there is a probability that the [nonmoving party] will prevail on the claim by presenting substantial evidence to support a *prima facie* case" on each claim. ORS 31.150(4). The court shall grant the motion unless the nonmoving party meets that burden. ORS 31.150(1).

"We review a trial court's ruling on a special motion to strike for legal error." *Davoodian v. Rivera*, 327 Or App 197, 201, 535 P3d 309 (2023). In doing so, we "consider pleadings and supporting and opposing affidavits stating the facts upon which the liability or defense is based." ORS 31.150(5).

Plaintiff's operative complaint claims three counts each of defamation and false light and alleges that defendant "began a sustained and targeted social media campaign against [p]laintiff by publicly publishing statements about him on social media, as well as commenting on the social media posts of others." Plaintiff identified three statements defendant made on social media between April and August 2020 and alleges that defendant made the statements knowing they were false or with reckless disregard for their truth or falsity.

In her answer, defendant raised several affirmative defenses, including that all three statements reference allegations she had made against plaintiff in a separate, pending lawsuit that she filed in April 2020.[2] Defendant also brought three counterclaims against plaintiff, alleging First Amendment retaliation under 42 USC section 1983; retaliation in violation of her right to free expression under Article I, section 8, of the Oregon Constitution; and aiding and abetting discrimination in a public accommodation under ORS 659A.406. Defendant asserted that the conduct from which her counterclaims arose was plaintiff's filing of the complaint against her in the instant case alleging defamation and false light.

Plaintiff filed an ORS 31.150 special motion to strike as well as an ORCP 21 motion to dismiss defendant's

---

[2] Defendant also filed a special motion to strike plaintiff's claims, which the trial court granted in part and denied in part. Defendant did not appeal that ruling.

counterclaims, arguing that the counterclaims are barred by Oregon's "absolute" litigation privilege as set forth in *Mantia v. Hanson*, 190 Or App 412, 79 P3d 404 (2003). In response, defendant acknowledged that plaintiff had met his initial burden to show that her counterclaims arose from a document submitted in a judicial proceeding, ORS 31.150(2)(a), and that the burden therefore shifted to her to make a *prima facie* showing of prevailing on her claims. Defendant argued that the absolute privilege does not apply in the ORS 31.150 context, that it cannot preclude statutory and constitutional claims, and that she properly pleaded and established a *prima facie* case in support of her counterclaims. The trial court concluded that all three of defendant's counterclaims are barred by Oregon's absolute privilege and granted plaintiff's special motion to strike.[3] This appeal followed.

"Oregon courts have long recognized, and enforced, an absolute privilege for statements in the course of or incident to judicial and quasi-judicial proceedings" that "applies equally to parties to such proceedings and to their attorneys." *Mantia*, 190 Or App at 417 (collecting cases). The public policy underlying the privilege is "securing to attorneys as officers of the court the utmost freedom in their efforts to secure justice for their clients." *Id.* (quoting *Restatement (Second) of Torts* § 586 comment a (1977); *see also Ramstead v. Morgan*, 219 Or 383, 387, 347 P2d 594 (1959) ("[T]here are certain relations of life in which it is so important that the persons engaged in them should be able to speak freely that the law takes the risk of their abusing the occasion and speaking maliciously as well as untruly, and in order that their duties may be carried on freely and without fear of any action being brought against them[.]" (Internal quotation marks and citation omitted.)).

Defendant argues that Oregon's litigation privilege does not foreclose her counterclaims because they are "based not on defamatory statements or actions taken in the

---

[3] In her second assignment of error, defendant argues that the trial court erred in granting plaintiff's ORCP 21 motion to dismiss her counterclaims on the same basis. Because we agree with plaintiff that the trial court did not rule on that motion, we reject defendant's second assignment of error without further discussion.

filing of [p]laintiff's complaint * * * but on *the fact of the filing itself* as a means of retaliating" against her for the claims she asserted in her separate lawsuit and that "[t]hat conduct is simply not the sort of conduct against which the absolute privilege is intended to protect." (Emphasis in original.) She further argues that "retaliation-based counterclaims are among the very sort of counterclaims that should not be foreclosed by the litigation privilege" because "claims relating to the prosecution of unfounded litigation are intended to prohibit conduct that subverts the underlying purpose of the judicial process," which the litigation privilege is meant to protect.[4] We are not persuaded.

The absolute litigation privilege squarely applies to "statements or writings made during or as part of the litigation itself." *Chard v. Galton*, 277 Or 109, 113, 559 P2d 1280 (1977). But we have also held that the absolute privilege extends to "*actions taken* and statements made in connection with a judicial proceeding." *Franson v. Radich*, 84 Or App 715, 735 P2d 632 (1987) (emphasis added); *see also Mantia*, 190 Or App at 423 (explaining that *Franson* "extended the application of the absolute privilege" by holding that "the principle applied not merely to defamatory statements, but also to conduct undertaken in connection with litigation"). In *Franson*, we affirmed the dismissal of a tort claim against the defendant attorney based in part on her conduct of filing an action for a temporary injunction. 84 Or App at 719. Defendant has not asked us to overrule

---

[4] We note what defendant does not argue on appeal. First, defendant does not dispute, as she did below, that the litigation privilege may be considered in the second step of the ORS 31.150 analysis of whether the nonmoving party has established that there is a probability of prevailing on their claim. Although we have not squarely decided that issue, we decline to address it here because defendant has not advanced that argument on appeal. *See Plotkin v. SAIF*, 280 Or App 812, 829, 385 P3d 1167 (2016), *rev den*, 360 Or 851 (2017) (noting that we have yet to address whether ORS 31.150 requires a nonmoving party to produce evidence capable of defeating affirmative defenses in order to meet their *prima facie* burden at the second step of the anti-SLAPP analysis); *Johnson v. Monsanto Co.*, 333 Or App 678, 700, 554 P3d 290 (2024) (declining to undertake analysis on an issue when the party "has failed to do so itself" in its briefing). Second, defendant does not dispute, as she did below, that the litigation privilege applies to constitutional and statutory retaliation claims. That also appears to be an open question, given that the privilege originally applied only to defamation actions but has been extended to "any *tort action* based on statements made in connection to a judicial proceeding." *Wollam v. Brandt*, 154 Or App 156, 162 n 5, 961 P2d 219 (1998) (emphasis added). We also decline to undertake that analysis without briefing on the issue.

*Franson* or argued that its holding is plainly wrong. In any event, we see no reason to distinguish between the conduct of filing a complaint in a judicial proceeding and the statements made within the complaint itself for purposes of the absolute privilege. Even if the act of filing the complaint were not absolutely privileged, the allegations in the complaint are. It would be difficult, if not impossible, to evaluate whether filing a complaint constitutes retaliation without also taking into consideration the contents of that filing.

To be sure, we have recognized two exceptions to absolute privilege: wrongful use of civil proceedings and intentional interference with economic relations when the "improper means" is wrongful use of civil proceedings. *See Mantia*, 190 Or App at 419-29 (explaining that "an absolute privilege [is] not absolute" when "[a]n actor's conduct is so egregious as to be deprived of the protections of the absolute privilege when that conduct satisfies the elements of wrongful initiation" of civil proceedings or when "the prosecution of unfounded litigation constitutes actionable 'improper means' for purposes of tortious interference" with economic relations). And while we agree with defendant that the public policy underlying the absolute privilege militates against shielding unfounded litigation, in our view, the exceptions carved out in our case law and synthesized in *Mantia* adequately protect against subversion of the purpose of the privilege. *Mantia* does not foreclose the possibility that the privilege could be overcome for any (tort) claim premised on wrongful initiation of civil proceedings, so long as the elements of wrongful initiation are subsumed within the elements of the claim. Here, as evidenced by this appeal, defendant necessarily cannot plead and prove an essential element of wrongful initiation: that the underlying proceeding was terminated in her favor. *See Mohabeer v. Farmers Ins. Exchange*, 318 Or App 313, 318 n 3, 508 P3d 37, *rev den*, 370 Or 212 (2022) ("The elements of a claim for wrongful initiation of a civil proceeding are (1) commencement and prosecution by the defendant of a judicial proceeding against the plaintiff; (2) termination of the underlying proceeding in the plaintiff's favor; (3) absence of probable cause to prosecute the underlying proceeding; (4) malice in initiating the underlying proceeding; and (5) damages." (Citation omitted.)).

Alternatively, defendant argues that the litigation privilege does not apply to her federal counterclaim under 42 USC section 1983. Defendant points to *Martinez v. California*, 444 US 277, 100 S Ct 553, 62 L Ed 2d 481 (1980), where the Court explained that state law cannot immunize conduct that violates federal law, even when the federal cause of action is brought in state court. We agree.

In *Martinez*, the Court considered whether a California statute granting absolute immunity to public employees who make parole-release determinations applied to the plaintiff's claim brought under section 1983. *Id.* at 279. The Court explained, "It is clear that the California immunity statute does not control this claim even though the federal cause of action is being asserted in the state courts." *Id.* at 284. The Court reasoned that "[c]onduct by persons acting under color of state law which is wrongful under 42 USC § 1983 *** cannot be immunized by state law" because "[a] construction of the federal statute which permitted a state immunity defense to have controlling effect would transmute a basic guarantee into an illusory promise; and the supremacy clause of the Constitution insures that the proper construction may be enforced." *Id.* at 284 n 8 (internal quotation marks and citation omitted). Although plaintiff argues that that language from *Martinez* is *dictum*, the Court later reaffirmed *Martinez*'s holding that "a state law that immunizes government conduct otherwise subject to suit under § 1983 is preempted, even where the federal civil rights litigation takes place in state court, because the application of the state immunity law would thwart the congressional remedy." *Felder v. Casey*, 487 US 131, 139, 108 S Ct 2302, 101 L Ed 2d 123 (1988) (citing *Martinez*, 444 US at 284); *see also Kimes v. Stone*, 84 F3d 1121, 1126-28 (9th Cir 1996) (stating that "the existence of § 1983 immunities is a matter of federal law," that "state immunity law does not govern § 1983 claims," and that *Felder* "explicitly treated" that language in *Martinez* as its holding); *Beason v. Harcleroad*, 105 Or App 376, 381, 805 P2d 700 (1991) ("With respect to any action under section 1983, federal law controls both the substantive elements of the claim and all defenses based on immunity."). Thus, while Oregon's litigation privilege is a judicially created rule of state law that has not been

codified by the legislature, it nonetheless cannot thwart the federal cause of action in state court.

We acknowledge that "Congress did not intend § 1983 to abrogate immunities 'well grounded in history and reason.'" *Buckley v. Fitzsimmons*, 509 US 259, 268, 113 S Ct 2606, 125 L Ed 2d 209 (1993); *see also id.* ("Certain immunities were so well established in 1871, when § 1983 was enacted, that we presume that Congress would have specifically so provided had it wished to abolish them." (Internal quotation marks and citation omitted.)). But plaintiff does not contend that his conduct was immunized under the common law as it existed in 1871, and we will not venture to develop that argument on his behalf. *Johnson v. Monsanto Co.*, 333 Or App 678, 700, 554 P3d 290 (2024) (declining to undertake analysis on an issue when the party "has failed to do so itself" in its briefing). Instead, he argues that Oregon's litigation privilege bars defendant's section 1983 claim because "she has an alternate forum to vindicate her federal rights" in federal court. We reject that argument as inconsistent with *Martinez* and its progeny.

Having concluded that Oregon's litigation privilege precludes defendant's counterclaims brought under state law but not her counterclaim under federal law, the remaining question is whether defendant has established that there is a probability that she "will prevail on the claim by presenting substantial evidence to support a *prima facie* case." ORS 31.150(4). Defendant acknowledges, and we agree, that the trial court did not reach that issue. Even so, we may address an issue that the trial court did not reach in its analysis under ORS 31.150 when "that question was fairly presented to the trial court, and the record was sufficiently developed to enable our review." *Mullen v. Meredith Corp.*, 271 Or App 698, 707, 353 P3d 598 (2015). However, we decline to do so here, given that defendant expressly asks that we remand to the trial court to make that determination in the first instance.

Reversed and remanded as to defendant's 42 USC section 1983 counterclaim; otherwise affirmed.